UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WISCONSIN SHEET METAL WORKERS
HEALTH AND BENEFIT FUND and
WILLIAM HOEPNER,

        Plaintiffs,

        v.                                      Case No. 04-C-1171

AMERICAN METALCRAFT
INDUSTRIES, INC. and
NT LEASING, INC.,

        Defendants.

---

**DECISION AND ORDER ON MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## I. BACKGROUND

Wisconsin Sheet Metal Workers Health and Benefit Fund and William Hoepner (collectively "the Fund") commenced this action by filing a complaint naming American Metalcraft Industries, Inc. ("American Metalcraft") and NT Leasing, Inc. ("NT Leasing") as defendants. The complaint contains nine claims and alleges that the defendants violated certain collective bargaining agreements, trust plans, and trust agreements. The complaint invokes this court's jurisdiction pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 141 et seq. ("LMRA").

On January 25, 2005, the defendants filed a motion to dismiss based on lack of jurisdiction and a motion for partial summary judgment. The parties thereafter entered into a stipulation that provides for the dismissal of Claims IV through IX of the complaint, to the extent that such claims

seek injunctive or equitable relief, and for the dismissal of "argument IV of [the defendants'] Motion for Partial Summary Judgment." (Parties' Stipulation) The court entered an order accordingly. The remainder of the defendants' motions to dismiss and for partial summary judgment are now fully briefed and ready for decision.

Facts

The following facts are unopposed unless otherwise noted.

Grove Accu-Fab, Inc. ("Grove Accu-Fab") was a corporate entity engaged in the business of sheet metal fabrication, but is now dissolved. (Compl. at ¶ 9; Defs.' Mem. at ¶ 3.) In October of 2004, Grove Accu-Fab ceased operations. It then sold its assets to NT Leasing, which in turn leased those assets to American Metalcraft. (Pls.' Resp. at ¶¶ 14, 16; Defs.' Mem. at ¶ 7.)

The plaintiffs allege that Grove Accu-Fab was owned by the same person or persons who now own NT Leasing and American Metalcraft, to wit, Kenneth Neubauer and his wife Susan Neubauer. (Pls.' Resp. at ¶¶ 1, 21.) The plaintiffs further allege that American Metalcraft is currently carrying on the same business that Grove Accu-Fab once carried on and employs substantially the same workforce as Grove Accu-Fab. (Pls.' Resp. at ¶¶ 23-25.) The defendants have not admitted the allegations of this paragraph.

Before its dissolution, Grove Accu-Fab entered into two interrelated collective bargaining agreements which are at issue here. The first agreement covered the time period from September 1, 2000 to August 31, 2003. The second agreement covered the time period from September 1, 2001 to August 31, 2004. (Defs.' Mem. at ¶¶ 15-17; Pls.' Resp. at ¶¶ 2-6.)

The plaintiffs allege that both agreements remained in effect after the stated expiration dates due to "evergreen provisions" contained in both agreements, which provide that the agreements

2

"shall continue in force from year to year thereafter." (Pls.' Resp. at 6-8.) The defendants deny that the agreements remained in effect after the stated dates and allege that proper notice was given by which the agreements were terminated. (Defs.' Reply at ¶ 7.)

On August 16, 2004, default judgment was entered in the district court, case no. 04-C-626, in favor of the Fund and against Grove Accu-Fab in the amount of $64,465.35. (Pls.' Resp. at ¶ 13.) The default judgment was based on violations of ERISA, LMRA, and the collective bargaining agreements.

On October 15, 2004, Grove Accu-Fab entered into an agreement with the Fund whereby Grove Accu-Fab agreed to pay $15,757.19 in exchange for the Fund agreeing to the cancellation of a court order which was then preventing Grove Accu-Fab from selling its assets. The agreement was soon after carried out. (Defs.' Mem. at ¶ 22; Pls.' Resp. at ¶ 19.) The balance of the judgment against Grove Accu-Fab remains outstanding. (Pls.' Resp. at 20.)

## II. DISCUSSION

The claims contained in the plaintiffs' complaint can be arranged in three groups. The first group, which is composed of Claims I, II, and III, seeks judgment against the defendants for the amounts owing on the judgment previously obtained against Grove Accu-Fab. The second group, Claims IV, V, and VI, seeks judgment against the defendants for amounts owing to the Fund under the collective bargaining agreements for unpaid contributions, interest, and liquidated damages for the period from May 1, 2004 to October 15, 2004.[1] (Compl. at ¶¶ 60, 72, 78.) The third group,

---

[1] Within Claims IV, V, and VI, the plaintiffs allege that the defendants are liable to them for amounts attributable to the period from April 1, 2004 to the present. (Compl. at ¶¶ 58, 78) However, the prayer for relief for all three claims, which is found at ¶ 60, asks for amounts attributable only to the period from May 1, 2004 to October 15, 2004.

3

Claims VII, VIII, and IX, seeks judgment against the defendants for amounts owing to the Fund for unpaid contributions, interest, and liquidated damages for the period from October 15, 2004 to the commencement of this action. (Compl. at ¶¶ 86, 98, 104.)

In each group of claims, the plaintiffs allege that they are entitled to judgment based on three theories, all relating to the close relationship between Grove Accu-Fab and the defendants: (1) single employer liability; (2) alter ego liability; and (3) successor employer liability.

In considering the defendants' motion to dismiss, this court is to accept as true all of the plaintiffs' well-pleaded facts and draw all reasonable inferences in their favor, as they are the non-moving party. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002).

The defendants' motion to dismiss is based on their contention that this court does not have jurisdiction over the plaintiffs' claims. In support of this argument, the defendants cite *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982). In *Kaiser Steel*, the Court held that "[t]he [National Labor Relations] Board is vested with primary jurisdiction to determine what is or is not an unfair labor practice. As a general rule, federal courts do not have jurisdiction over activity which 'is arguably subject to § 7 or § 8 of the [National Labor Relations Act],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" *Id.* at 83.

Without showing how the case at hand has anything to do with determining what is an "unfair labor practice," the defendants next cite a line of Supreme Court cases for the proposition that district courts lack jurisdiction to hear post-contract collection claims under ERISA. (Defs.' Mem. at 6-8.) *In Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539 (1988) the Supreme Court held that §§ 502 and 515 of ERISA (29 U.S.C. §§ 1132 and 1145) do not confer jurisdiction on the district courts to determine whether an employer's decision to stop

4

postcontract contributions constitutes a violation of the National Labor Relations Act ("NLRA"). *Id*. at 549. In certain circumstances when contract negotiations between a union and an employer are ongoing, the employer is required to continue to make contributions even after the collective bargaining agreement requiring them to do so expires, because stopping contributions would constitute an "unfair labor practice," and is thus prohibited by NLRA. As noted above, such determinations of what is an "unfair labor practice" are generally made by the National Labor Relations Board.

The issue in *Laborers Health* was whether ERISA changed the general rule and provided the district courts with jurisdiction over such disputes. Title 29 U.S.C. § 1145 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

Title 29 U.S.C. § 1132 in turn provides a civil remedy for violations of § 1145. The *Laborers Health* Court found that § 1145 applies only to "promised contributions," and not to contributions required by the NLRA. *Laborers Health*, 484 U.S. at 548-49. Thus, the general rule that the National Labor Relations Board has primary jurisdiction over "unfair labor practice" determinations remained unchanged.

That issue, however, is entirely absent from the case at hand. Nowhere do the plaintiffs allege that the defendants in this case are required to make contributions to the Fund because failure to do so would be an "unfair labor practice." The plaintiffs instead argue that the defendants are in fact bound by the agreements at issue under various theories (single employer liability, alter ego liability, and successor employer liability), and that the agreements remained in effect for the applicable time

5

periods. If the plaintiffs can show that the defendants are bound to the agreements at issue under one or all of these various theories, then the defendants would be "obligated to make contributions," and § 1145 would apply. *Laborers Health* and any possible conflict with the jurisdiction of the National Labor Relations Board are therefore entirely irrelevant to the case at hand.

This court does have jurisdiction under ERISA to determine whether or not the defendants are bound to the collective bargaining agreements by the doctrines of single employer liability, alter ego liability, and successor employer liability. *See Moriarty v. Svec*, 164 F.3d 323 (7th Cir. 1998) (successor and single employer liability); *Central States, Southeast & Southwest Areas Pension Fund v. Sloan*, 902 F.2d 593, 596 (7th Cir.1990) (alter ego liability). The court therefore finds that it does have jurisdiction over this action based on ERISA. It thus becomes unnecessary to analyze the argument raised by the plaintiffs that this court also has jurisdiction pursuant to LMRA.

In their response, rather than arguing that *Laborers Health* is not applicable, the plaintiffs dedicate much of their argument to the assertion that based on the "evergreen provisions," the agreements remained in effect after their stated dates of expiration. The defendants counter in their reply by arguing that, under the provisions of the contract, Grove Accu-Fab gave sufficient notice to terminate the contracts and nullify the "evergreen provisions." Although this court has decided that *Laborers Health's* jurisdictional holding does not apply to this case, if the agreements had in fact expired on the dates stated therein, the defendants would have a defense to at least some of the plaintiffs' claims. This is so because the plaintiffs' third group of claims (Claims VII, VIII, and IX) cover a time period after the stated expiration date, and the second group of claims (Claims IV, V,

and VI) cover a time period that bridges the stated expiration date.[2] If the agreements had expired, barring some additional reason for their resuscitation, the defendants would not be liable for those contributions.

The procedural posture of this issue is somewhat muddied. The defendants motion was captioned "Defendants' Notice of Motions and Motions for Dismissal for Lack of Jurisdiction and Partial Summary Judgment Pursuant to Rule 56." The defendants' motions and supporting filings, however, do not clearly indicate those issues on which they are seeking summary judgment. Moreover, although the defendants' supporting memorandum contains a statement of facts, the defendants did not submit separate proposed findings of fact, as required by Civil Local Rule 56.2 when bringing a motion for summary judgment.

Furthermore, in their memorandum in support of their motions, the defendants do not present any factual allegations regarding the notice of termination that Grove Accu-Fab allegedly gave the plaintiffs or legal argument regarding when the agreements expired. The first part of the memorandum instead assumes that the agreements had expired and concentrates on the jurisdictional arguments discussed above. The memorandum then presents several arguments why, even if the court does have jurisdiction, it should nevertheless deny the plaintiffs relief. (Defs.' Mem. at 9-11.) Those arguments, however, also assume that the agreements had terminated and deal with situations where an employer might be required to make contributions even after the expiration of a collective bargaining agreement.

---

[2] The two agreements at issue have different stated dates of expiration. The date at issue, however, is August 31, 2004, because that is that date which the defendants argue that Grove Accu-Fab's notice became effective to terminate both agreements. (Defs.' Reply at 5-6.)

7

It is only in the reply, after the plaintiffs raised the issue of the "evergreen provisions" in their response, that the defendants offer factual evidence regarding the notice of termination that was allegedly given by Grove Accu-Fab and legal argument as to when the agreements expired. As such, the plaintiffs have not had any opportunity to respond to the evidence submitted by the defendants regarding the notice that was allegedly given.

As a result, if the defendants intended their motion for partial summary judgment to address the issue of the particular date on which the agreements expired (if they expired at all), and the claims dependent on that determination, they failed to properly present such issues in their motion. As the defendants have not made a showing that they are entitled to summary judgment on any other issue, their motion for partial summary judgment will be denied. However, because it appears that the issue of when the agreements expired may turn on undisputed facts and this court's interpretation of certain contractual provisions, that issue may be a candidate for a future summary judgment motion. The court will therefore deny the defendants' motion for partial summary judgment without prejudice.

For all of the foregoing reasons, the defendants' motion to dismiss will be denied and their motion for partial summary judgment will be denied without prejudice.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion to dismiss be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendants' motion for partial summary judgment be and hereby is **DENIED WITHOUT PREJUDICE**.

A status conference will be conducted on <u>Monday, May 9, 2005 at 9:00 A.M.</u> in Room 253 of the U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee, WI 53202. At that conference the court will discuss with the parties the steps needed to further process this case to final resolution.

**SO ORDERED** this 29th day of April 2005, at Milwaukee, Wisconsin.

          /s/ William E. Callahan, Jr.
          WILLIAM E. CALLAHAN, JR.
          United States Magistrate Judge

9